Court, please. Mrs. Phelps-Roper and her fellow church members are circumspect and undertake to know the law and follow the law and desire to be lawful in all their street activity. At the same time, they feel a duty to, in timely, relevant ways, warn this nation of the dire consequences of policies of sin. By various decisions, including the legislation at issue, Nebraska officials have systematically prohibited the speech of Mrs. Phelps-Roper and her fellow church members. They are aware that there are cultural rituals and ceremonies related to death and of the need to balance, and they self-imposed a reasonable distance, a reasonable privacy bubble, if you will, always between themselves and churches and other, including government buildings, where funerals were being held, funeral or memorials were being held. Notwithstanding that, the Nebraska legislature imposed a 300-foot limit and, without exception, has only ever applied that version of the law or the 500-foot version of the law to members of the Westboro Baptist Church. Without exception, that law has never been applied to another single person, another single group, another single activity. 300 feet, although we believe it was unwarranted, was adequate, and the reasons cited by the legislature and the reasons cited by District Court Lincoln. You say it's never been applied to another group. Are there instances in the record where another group was engaged in the protest activities as defined in the statute and the law was not applied? There are repeated instances of citizens from throughout the community, throughout surrounding communities, showing up with signs, flags, and message-bearing garments, who were immediately outside where the event was taking place, who streamed literally from front doors down from where the event was taking place. The only time they went outside 300 or 500 feet was when there were so many of them, there wasn't enough space left, and that naturally caused them to have to stand. Does it matter that they are invited or welcomed by the? Well, of course, the invitee has been bandied about, frankly, by almost every state of the nation, including Nebraska. Here are the problems with the invitee. First and foremost, the United States Supreme Court has said repeatedly, those sidewalks belong to the other speakers simply because they're called an invitee. To put it plainly, the family, the funeral planners, they don't own those sidewalks. They don't get to remove people from those sidewalks simply by labeling someone an invitee. In the second place, the law makes no such exception. The law doesn't say, unless you're an invitee. Now, there was an effort at the trial court level to somehow shoehorn this concept of an invitee into what the trial court called the triggering language of this targeted picketing. That's the language of the law, but that's not what the statute says. If it can be applied to let someone take control of those sidewalks away from what the Supreme Court says their use is, then the law cannot stand. In the third place, the record evidence doesn't support that it was only invitees. However, we might be defining those. Law enforcement aren't given a definition. They're not trained in what it means. The statute doesn't give a definition because it doesn't recognize an invitee. In fact, even if we say, even if we add to the statute the notion that a family can say, I want to ring up somebody and ask them to have a flag line right outside the front door, and I want to make that part of the ceremony. We have no quarrel with that, and maybe the statute would let them do it. Maybe it wouldn't. I don't know. But this goes so far beyond that until you couldn't even, unless you were going through the front door, you couldn't tell there was a flag line at the front door if you look at the photographs and video. Because what we're talking about is a mile, a half a mile, blocks, citizens, flag bearers, bikers with their bikes revving, people with their boom box playing, big banners, all manner. It is, in fact, if you saw them on the ground, these are patriotic pep rallies. These soldiers' deaths and funerals are being used to occasion patriotic pep rallies. But yet when this church shows up to say, we believe that is the wrong response when the Lord kills one of your soldiers, they're sent to the South 40. And all throughout this record, you see that that's the dynamic that prevails. Our folks would arrive at the scene and see fire trucks, giant cranes holding flags as big as this room, hundreds and hundreds of citizens. The local newspaper puts the route and paths and where you can park. They turn it into a huge public event. And in reality, we sat and watched for almost two years as this nation did this, all across the land, saying this is not pleasing to the Lord. We've got to go dissent. And that's when they start passing these laws. And that's when the Supreme Court case of Snyder v. Phelps came to pass. There's not any justification for saying when you have that public event, even that you can take a 300-foot law, let alone a 500-foot law, which this court in Manchester, in the concurring opinion, said is a possible slippery slope. We are so off the slope in that you can't see the slope anymore. And never, there is not an instance in this record where this plaintiff or her fellow church members were anywhere close to 300 or 500 feet. So it's bad enough that the law is that broad. It's bad enough that the law is only applied to one group. But then you add insult to that injury by that group has put 1,000 feet, 1,500 feet, 2,000 feet. And the only answer that came at trial is, well, did you ask them to move? When we could safely, we did. When we could without getting crosswise with law enforcement, we did. Most of the time, you don't have time for that. You've driven in from Kansas, and it's time to go. And when we did ask, we were absolutely told no. In every instance, law enforcement was contacted in advance. Arrangements would be made. They would tell us where we had to stand. There were some instances shown in the record where they would actually put our group at the 300-foot mark over the phone or the 500-foot mark when the law changed. But yet, when our group would show up, they would say, no, we've changed our mind. You go another 500 feet away. Now, that is routinely how this law is applied. And the explanation given is first the privacy interest. Well, that's what drove the 300 feet. Why did we need 200 more? There was never any instance of any violation of that law, of any problems, no instances of scuff, scuffles, violence, confrontations, nothing of that nature. So why did it have to go higher to 500 feet? Well, there was evidence in the record that supported that. Wasn't there a Captain David Saver who testified that that was an effective barrier for safety reasons and crowd control? Right. And so what the discussion was about is we want to put a distance between not the funeral goers and Westboro, but the big group out having the pep rally and Westboro. In every letter, and they poured over the letters to law enforcement, our routine practice was, would you put a reasonable buffer between the groups for safety? Most of the time, almost all the time, that request was denied. So to say there was a need to have the 500 people who came with the flags and signs right outside the building, a gap between them and the 5 to 15 people who came from Westboro. So there, because they have such conflicting views to put a distance, we routinely asked for that. They routinely denied it. Would you stay closer to the left? So the mic picks up, please. Thank you. Did that answer the question? Okay. Well, and so perhaps what I should add to that then, so to then come in and say, we need more footage when you're not putting footage between those groups anyway, and then still only to apply that footage to the group that has the dissenting view. That's the problem with saying there was a safety issue. And the record shows very clearly, there was never any instance of any crowd control problem caused by Westboro, any safety problems caused by Westboro, or any confrontations between Westboro and anybody else on the scene. Well, there's no question that your clients have concern for violent situations erupting. I mean, they prearrange with police, they seek escape routes and that sort of thing. So it is something that they understand, isn't it, that there's a potential for violence here? Well, what we've learned in 26 years is that if we're not circumspect, if we don't communicate good with law enforcement, if we don't have proper decorum, that we lose the opportunity to prevent people responding. We know that people don't like the words. But what the record also shows is that in between six and 700 of the death-related pickets and almost now 60,000 all pickets, if there have been two handfuls where people got physical with Westboro, that would be, I'd be rounding up. It's statistically insignificant. Besides which, the violent response of others, the Supreme Court has repeatedly said, you don't use that against the dissenting voice, you use the laws that are available to you, and you stop people from being violent. There's all kinds of laws that prohibit that kind of activity. It seems to me most of your argument this morning has been about the as-applied challenge. On your facial challenge, how do you get around the city of Manchester? Well, a couple of things I think distinguish it. First of all, I have to preserve that we believe even 300 feet is too far, but I'll recognize that's what happened in Manchester. But first of all, one of the points made in Manchester is that law had never been applied. And so all of the body of law that says you can enlighten your facial challenge, it's no longer hypothetical how the law might be applied. When you're looking at a facial challenge when there's never been application, then what the court says is, is there any possible way this law could be applied properly? Well, in this case, we don't have to question whether the applied in every particular, improperly, overly broadly, discriminatorily, in every instance that it's been applied without exception. It was my understanding that the October 2011 event appearance is the only one that occurred following the effective date of the amended law. No, Your Honor. I think that statement was made in the several places in the briefing. Is that, do you think that's incorrect? It is correct. No, it's incorrect that only that occurred. Multiple ones occurred after. The reason the trial court honed in, and we have said in our brief and contend improperly so, on one instance was because of who was named as a defendant. By the time this case got to trial, the state officials and the Omaha official were the remaining defendants. However, our burden was to show a discriminatory application of the law. So, on the eve of trial, when the trial court ruled that only events after the 500 foot would be considered, we preserved the objection, noting that this court said, when sending the case back down, that the trial court should look at the as applied and the 500 feet, but could consider application under the 300 feet, which common sense suggests should happen. So, there have been, there were multiple. So, is the October 2011 date, is that the only one that involved, would involve the police department, the defendant police in this case? The only one that happened in Omaha after the change of the law to 500 feet. In Omaha, the chief of police is a defendant. Correct. Correct. Now, and that gets us into this, the evidence about the communication that took place with the police department and how your group ended up 2,000 feet away instead of 500 feet away. So, my question is, and the court made some findings of fact with respect to how that came about, with respect to your burden and the standard of review, isn't there evidence in the record that supports the district court's factual findings in that regard? How do you get around or overturn those factual findings? Well, I think I would say secondarily, the weight of the evidence is against that finding. It's not only the weight of the evidence as to that event and what testimony came from the Westboro members as to that event and the documentation as to that event. It's also against the weight of the evidence about always how the relationship and communication went between Westboro and law enforcement and Westboro and Omaha in particular. I see that I'm out of my time for now. Very well. Thank you, Your Honors. Mr. Post? Good morning. You may proceed. May it please the court, Ryan Post from the Nebraska Attorney General's Office on behalf of the Nebraska Governor and the Attorney General, and the appellees will be dividing their time, 15 minutes for the state and five minutes for Mr. Wiesen with the City of Omaha. The Nebraska funeral picketing law is a temporary and finite restriction on speech targeting a funeral. It makes no reference to the content of speech on its face. The law strikes an appropriate balance between the privacy of funeral attendees, as this court recognized in the City of Manchester, and the speech of picketers who may wish to picket that event. The time restriction in the law does not depend on when the funeral ends, and is more narrow than the restrictions in the City of Manchester, the Phelps-Roper v. Koster case, or the Strickland case. And if you take a look, it's actually slightly different because it only includes... Except for the 500 feet, right? Except for the 500 feet, correct. And the key with the 500 foot buffer is, it does not deny the plaintiff the opportunity to win the attention of her intended audience. And as you see from the record, there was some discussion at trial what the intended audience was. And the intended audience of Westboro Baptist Church at these pickets is not just the funeral attendees. It includes counter-picketers and passers-by. And there was testimony that the crowd, to the extent there was a crowd, follows the church. Secondly, the church picks their picket locations based on traffic volume. And there was evidence in the record that they reuse the signs that they use at funeral pickets. They will reuse them at non-funeral pickets. And lastly, funeral pickets only make up 1%, approximately 500 of the 55,000 pickets that are referenced in the record. The Nebraska funeral picketing law places no limit on the number of protesters, their noise level, the number, size, text, or images on their signs. They may still reach their intended audience, however broadly defined it is. I have two questions. What was the impetus for raising the 300-foot level to 500-foot distance, I should say, not level? Two reasons. And those are stated in the stated intent in the statute. First, the privacy of grieving families. Secondly, preserving the peace. And the discussion earlier about whether or not there had been any incidents of violence leading up to the law change, you may remember in the record, there's an incident approximately six months before the law was changed, where there actually was an act of violence where an individual used bear mace on the Westboro Baptist Church. And the legislature was aware of that. And at pages 1238 to 1252 in the joint appendix, there's an extensive discussion about preserving the peace at these events. And that highlights why this law is important. As this court has recognized, these funerals are a uniquely large event. There can be hundreds to thousands of people within a very small area. And we're not just talking about preserving the peace for the, we're talking about the privacy rights of the grieving families and the funeral attendees. But we're also concerned with preserving the peace in the broader area. And if you have too many people in too small of an area, just like the expert testimony from Mr. David Saver highlighted, it will make, it makes it more difficult for law enforcement to quickly respond to whatever situations may arise. And what did the evidence show as to the frequency of the need for law enforcement action? That's, I guess it's really a two-part question. The law enforcement, the evidence showed that law enforcement were present if, at most, if not all of the pickets. As far as action, if you're referring to having to respond to a particular event, there was, there was the incident with Mr. Vogel in Omaha. And there was also testimony from Mr. Hecker from Norfolk about how, when there were so many people within this small area, and he estimated it was anywhere from 300 to 400 feet at that time, that his officers were not able to quickly identify potential problems before they may arise. There was just simply too many people in that small of an area. What about the argument? I think it's the argument that the law has been applied in a discriminatory manner, that these people are, this group, Phelps group is the only group that it's been enforced against. First, there's at least, we at least dispute the initial characterization that the law has been applied at all. As you will see in the record, more often than not, almost 100% of the time, I believe the quote is, the Westboro Baptist Church chooses their own location to picket. And there are multiple instances in the record of handwritten notes where they're indicating that this is a good location after they spoke with the police department. Secondly, to the extent that they want to talk about the potentially hundreds to thousands of people that may be in the area, the evidence shows that those people are around the funeral procession route, which the law does not cover. There's no evidence that those people are within the definition of the statute, that they're engaged in protest activities targeting a funeral. The fact that they may be present, engaged in casual conversation or some other activity does not fit them within the statute. And this court has said in both the Thorburn case and the Phelps Roper v. Koster case, that the directed at and targeted language is appropriate. But this statute doesn't define protest. This statute defines picketing as protest activities. And if we take a look at the Phelps Roper v. Koster case, this court has said that the lack of definition of protest activities is basically not a problem because there's no per se requirement that a statute define those terms. And the court applied a narrowing construction to avoid the constitutional difficulties that may arise if there are any with that. Well, I think what's been suggested in the case is that the situations where groups may show up to protest Westboro. Correct. And the evidence that would fall within, would you agree that those groups, if they were there for that purpose and engaged in that activity, they would fall within the terms of the statute? We do not believe that groups that are within the vicinity to picket the church, the Westboro Baptist Church, not the funeral. We do not believe they fall within the statute because their speech is not targeted. Regardless of their content, the speech is not targeted at the funeral or burial service. What, where do you, where do you, where do you draw that language from the terms of the, or the words of the statute that it has to be directed towards the funeral activities? In the, it's Nebraska Revised Statute 28-1320.01 Subdivision 1 towards the end of the very last sentence of that statute. It references when funerals are targeted for picketing and protest activities, and that's the language the district court referenced as well. What does the record show, if anything, whether any of the counter protest groups have been restrained by law enforcement officers, or hasn't that ever occurred? Has there ever been a counter protest group that got so violent that the Westboro people had to be protected by the police? I'm not aware of an instance in this record where counter picketers were so violent at a picket in Nebraska after the law was applied that the police had to restrict counter picketers. But the law isn't just concerned about, it's not, just concerned with after violence may occur. I mean, it's trying to anticipate that if violence has occurred to make sure that the law enforcement are in an appropriate position and they're able to handle the situation. And one of the purposes of the law is to preserve the privacy of the funeral procession? No, not the procession. Oh, I see. No, just the privacy of the grieving families. The funeral processions are specifically excluded from the statute. And so when Ms. Phelps talks about the bands and the fire trucks and all that, that's irrelevant to anything in this case? In other words, are they not subject to the same privacy constraints? If I may ask, whose privacy are the... Well, is the law designed to protect the privacy of the funeral procession or just of the grieving family? In other words, can you separate one from the other? The law makes a distinction between the procession and the privacy of the grieving families. And as this... The concept that you were describing before, that the statute requires or only applies to those that are targeting the funeral, does that undermine the conclusion that this is content neutral? No, it does not for the same reasons that this court highlighted in the City of Manchester case, as well as the Coster case. And even most recently in the Phelps-Roper v. County of St. Charles case, and I recognize it's an unpublished opinion of this court, but this court specifically recognized that even after the McCollin decision, which has been raised in Ms. Phelps-Roper's briefs, that a statute similar to the Nebraska statute here is not content-based because of the targeting-slash-disruption language, or directed-at language. What's the reasoning that was used? Because it seems to me if it's... If it only applies to somebody who is anti-whatever the funeral is about, or targeting the funeral, but those who are pro it are not covered, at least it sounds to me like it may not necessarily be content-neutral. And I guess the distinction... We're not saying that anyone that's pro-funeral is not covered. We're saying that if they're engaged in picketing activities that are targeting the funeral, they would be covered no matter who it is or what they're saying. The distinction here on the... Patriot Guard riders have come up, and there's a distinction about whether or not they were invitees. And the district court equated the PGR to the funeral attendees that this court referenced in the City of Manchester case. And I understand that the court seemingly interchangeably uses funeral attendees and mourners, but at the point that someone is invited to the funeral to participate in speech, we do not believe that would fall within the definition of targeting the funeral. But if I show up with a sign that says, God loves the soldier, does it apply to me? If you were within the buffer zone and that sign is directed at or targeting the funeral, then yes, the statute would apply. And there's no evidence in the record, or I should say, that the district court did not make a factual finding that there was sufficient evidence to support that anyone who may have been in that category of speaker was either targeting the funeral or was within the buffer zone. Again, you see, and it's in the briefs, a number of pictures of people that happen to be standing in a location with signs. The evidence did not necessarily show that they were within the buffer zone, that they were targeting the funeral. It simply wasn't... Feltrope did not meet her evidentiary burden to show that to the extent they were even speaking, that they were within the definition of the statute. And the last thing I'd like to mention on the 500-foot buffer is just that the district court made the factual finding that at 500 feet, Ms. Feltrope had the opportunity to win the attention of her intended audience. And there's some discussion about how if you get too far away, you might be out of sight, out of sound, but that's not what we have at 500 feet. And under this court's precedent and the Supreme Court precedent, the 500-foot buffer is acceptable. What's the statute subsection that uses this language of targeting the funeral? It's the very first subsection. It's like 28-1320.01, subsection one. And it's the... Well, it's only one sentence, but it's towards the end of that sentence. Okay. So your position is you can take that language, which is in this subsection that describes the legislature's determination of a cognizable interest,   and you would apply that to the statute to protest that is mentioned later. We think the legislature was saying that they were only trying to include protest activities directed at or targeting a funeral consistent with the other statutes this court has analyzed. And part of the reason you have the targeted restriction or the directed at restriction is so that way your time, place, and manner restriction can be narrowly tailored. Because as the court has said, you do not want to include people who are unwittingly speaking within the zone, someone who may be having a random or casual conversation. And so without the directed at or targeted language, the statute could be interpreted to include more speech than is necessary to achieve the interests of the state. But your answer to my question, if I show up with God loves the soldier and I'm within the 500 feet, your answer is it does apply to me, right? If it is targeted at the funeral. Well, that's the question. If I show up with a sign, God loves the soldier, am I targeting it at the funeral? Yes, I mean, if that sign is targeted at the funeral, we cannot make a distinction between what that sign says. If it's within the buffer zone targeting the funeral and there's evidence to reflect that, then the law would include that. In other words, the law applies despite the content of the message. Correct. It's neutral in that respect, you would say, it applies to everything. Correct. I see your time is up.  That's correct, Your Honor, Wiesen. Good morning, Mr. Wiesen. You may proceed. Thank you, Your Honor. Good morning. May it please the court. My name is Ryan Wiesen. I'm an assistant city attorney for the city of Omaha, appearing on behalf of the appellee, Todd Schmaderer. I'd like to begin by noting that the claim that was asserted in the appellant's third amendment complaint is a very narrow claim. And that limits the question that's been presented to the district court and to this court for review. And it only sought injunctive and declaratory relief, prohibiting the appellee, Todd Schmaderer, in the city of Omaha from enforcing the Nebraska Funeral Picket Law against the appellant, Shirley Phillips-Roper. It doesn't seek damages for alleged past enforcement of the Nebraska Funeral Picket Law. And additionally, it doesn't assert any claims on behalf of the Westboro Baptist Church or as Shirley Phillips-Roper in any representative capacity. So when Ms. Phillips-Roper began her argument by stating, you know, the appellant, Shirley Phillips-Roper, and her fellow Westboro Baptist Church members, her fellow Westboro Baptist Church members are not parties to this action. They weren't parties at the district court. And they're not subject to this court's standard of review. Especially with concern to the as-applied challenge, there's well-established precedent that states, as-applied challenge consists of a challenge to the statute's application only as applied  And in this case, the parties before the court are the appellant, Shirley Phillips-Roper, and the chief of police, Todd Schmader, in the city of Omaha. And so there has to be a finding of an actual application of the Nebraska Funeral Picket Law in its current state by a representative of the city of Omaha against this specific appellant. And the factual findings from the district court show that that wasn't the case. There wasn't a factual finding of any application of the Nebraska Funeral Picket Law. And I think this is unique for most Westboro Baptist Church appeals in that it doesn't arise out of a motion for a preliminary injunction. And it doesn't arise out of a motion for summary judgment. In this case, we have an actual finder of fact that made factual decisions. The district court found, I think, three main contentions that are relevant to the appellee, Todd Schmader, in the city of Omaha. One, there is no evidence to suggest that Nebraska Funeral Picket Law was applied to Phillips-Roper and not others similarly situated at the October 2011 picket or any other picket in Omaha. Two, the court concludes that the evidence has not shown that the Omaha Police Department restricted Phillips-Roper's picketing to areas beyond the 500-foot buffer zone or treated her differently than any other funeral protesters. And three, that Phillips-Roper has not demonstrated that the Omaha Police Department permitted others to block Phillips-Roper from communicating her message in a way that violates her First Amendment rights. And I think that factual finding is particularly relevant when you look at the location that the appellant chose to protest and picket at the October 13, 2011 funeral. That intersection was an intersection where every single attendee going to that funeral had to pass through. So she was able to convey her message to every single member of her target audience. What was there evidence of counter protesters within the buffer zone to which the law was not applied? I don't believe at that picket or necessarily at any picket within the city of Omaha. Again, we're not talking about other pickets or protests that occurred in rural counties or outside of the city of Omaha. To the extent there was evidence about the Patriot Guard riders, again, there is evidence and I believe there's actually a factual finding by the district court that they were invited guests. They were invited by the family to participate in the funeral ride. And the analogy that I like to draw for that is if you have a veteran who passes away and there's a funeral frequently, there's an honor guard and there's an honor flag and there's maybe a 21 gun salute. Those individuals who are performing those aspects of those duties of the funeral process don't necessarily know the decedent or the family. They don't necessarily, they're not necessarily friends. But nonetheless, they have been invited to participate in that funeral ritual. And in this case, the evidence that was presented to this district court shows that the Patriot Guard riders only showed up when they were invited to by the funeral or by the decedent's family to participate in the funeral ritual, whether through a flag line or escorting the casket on its way from the church service to the place of burial. They were invited to participate in the funeral ride itself. And I think that's that distinction. Again, I'll just wrap up by, with a prayer for relief, stating that the appellee, Tai Shimano, believes that there is no evidence that he or anybody else of the city of Omaha applied the Nebraska Funeral Picket Law to the appellant, Philip Stroper, and that we would pray that the decision of the district court be affirmed. Real quick, was there evidence that they were invited? I'm sorry? Was there evidence that the Patriot Guard was invited? I believe so. The head of the Patriot Guard testified at trial under oath that they only attended events at the invitation of the family or representative of the family. And I believe if you look in the memorandum and order, although I don't have the exact page site with me at this time, that there is a factual finding to that effect. Thanks. Very well, thank you. Ms. Phelps? Well, do you disagree with their statement of the facts? Very much so. The captain of the Patriot Guard testified also and only gave five examples out of 40-some documented examples that the family asked for a flag line, not that the family asked for fire trucks, emergency vehicles, giant flags, crowds 500 to 1,000 thick. And he also testified that many people came above and beyond the invite. The very scenario that you presented happened repeatedly. Their own experts said, like counsel just told this court, if you had a sign to the effect of God loves this soldier or something positive about the soldier, how could that not be targeted to the funeral? So they say, yes, the law covers it. The problem is not once as applied did the law cover it. At page 34 of the brief, as one of scores of examples that are in the photographs and in the testimony of the Westboro members and in the testimony of some of the state's witnesses. A perfect example, one example, this woman has a sign that says RIP and the soldier's name. She's got a Bible citation. She's got some flags. She's right outside the building. And in fact, you can see the funeral vehicle right behind her. Over a thousand feet away is Mrs. Phelps Roper with her sign, nobody in sight. Now this is routinely what happened. Is that evidence at the relevant one? I forgotten the date of the October. No, this is not to the Omaha, October, 2011. Don't you have to have? Well, the problem with limiting it and that's why the trial court made no findings about this. First, let me ask you this. Is there any such evidence like you point to there related to that particular? Well, there's evidence, there's testimony that there were counters up outside the building. So to that extent, it's there. But I've got to emphasize, if I may, Your Honor, the law says when you challenge a law facially that the court is to look at how the law was applied, not limit itself to who happens to be the defendant. And there are two state defendants in this case. Second, when we raise an as applied challenge and have the burden of showing a pattern, regardless of who is the plaintiff or who are the defendants, how the law is applied, the cases are replete with examples. And specifically, the United States Supreme Court has endorsed the notion of a single plaintiff showing what's going on with other similarly situated people to whom the law is applied. It is a myth. You carve out a myth about how this law is being applied is if all you look at is one instance in Omaha. That was at the tail end of all these events. This rich body of evidence about how this law has been applied. You said in Manchester, it would be a whole different story if we had evidence that the law is being applied improperly, but we're going to take the city's attorney at his word that they're going to apply the law properly. We don't have to take anybody at their word here. This law, without exception, when Westboro shows up, the crowd is already there. When Westboro leaves, the crowd stays. The testimony is if Westboro didn't show up, the crowd would stay. The crowds are there. They're having a very public dialogue about what is going on with dying soldiers and what that imports. When you chant, God bless the USA over and over, you are addressing the topic of how God is dealing with this nation as it pertains to those dying soldiers. This little church has a dissenting viewpoint on that matter. If you look at the exhibits and the testimony in this trial, without exception, they were removed from sight and sound systematically, purposefully. If the law didn't get it done, the local decision on the ground got it done. That is why the as-applied evidence across all incidents is so critical to understanding what this law can do wrong. We don't have to speculate. But an as-applied challenge has to be against the entity that's enforcing the law, right? That's not the way I understand the case law at all, Your Honor. In fact, I again think Manchester would suggest otherwise. Okay, well, correct me if I'm wrong, but I don't understand why, how Lincoln might be enforcing.  I understand the question, and the answer, Your Honor, it shows what is the law capable of, if we think of it that way. You start out with, we'll assume there's a good way it can be applied facially. It seems to me you're blending facial and actual challenge. Right. The law blends them by saying the as-applied enlightens, and we put numerous authorities to that effect in our brief, the how it is applied enlightens the facial. You didn't have the benefit of that in Manchester. You have the benefit of that here, and it's all wrong on all levels. And the specific relief you request is? That the law be found unconstitutional and stricken. And then we go back to what would be constitutional. Did you concede at the outset of your argument that the 300-foot limitation was a workable limitation that would not be unconstitutional? If they really let them stand at 300 feet. Yes, Your Honor. Very well. We thank both sides for the argument. The case is now submitted, and we will take it under consideration.